Filed 12/28/23  P. v. Sutter CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BRANDON CARL SUTTER,<br><br>    Defendant and Appellant. | F086138<br><br>(Super. Ct. No. F17904754)<br><br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Alvin M. Harrell III, Judge.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Poochigian, Acting P. J., Franson, J. and Smith, J.

## INTRODUCTION

In 2017, appellant and defendant Brandon Carl Sutter (Sutter) was convicted after a jury trial of premeditated attempted murder with firearm and great bodily injury enhancements, and possession of a firearm by a felon. He was sentenced to life with the possibility of parole for premeditated attempted murder and 25 years to life for the attached firearm enhancement.

In 2023, the trial court denied Sutter's Penal Code[1] section 1172.6 petition and found he failed to make a prima facie case for resentencing.

On appeal, appellate counsel filed a brief which summarized the facts and procedural history with citations to the record, raised no issues, and asked this court to independently review the record pursuant to both *People v. Delgadillo* (2022) 14 Cal.5th 216 and *People v. Wende* (1979) 25 Cal.3d 436. Sutter submitted a supplemental brief. We address his contentions and affirm the trial court's denial of his petition.

## FACTS[2]

"Around June 2016, Francisco Martinez's mother allowed Sutter, whom Martinez had known for at least two years, to move into a house she owned on Mayfair Drive in Fresno. Although Sutter was supposed to keep other people out of the house and

---

[1]    All further statutory citations are to the Penal Code.

[2]    The following facts are from this court's nonpublished opinion in *People v. Sutter* (Mar. 8, 2019, F076910) (*Sutter*) which affirmed the judgment in Sutter's direct appeal, and the People filed the opinion as an exhibit in opposition to Sutter's petition without objection.

In reviewing a section 1172.6 petition, the court may rely on "the procedural history of the case recited in any prior appellate opinion." (§ 1172.6, subd. (d)(3); *People v. Clements* (2002) 75 Cal.App.5th 276, 292; *People v. Cooper* (2022) 77 Cal.App.5th 393, 406, fn. 9.) The role of the appellate opinion is limited, however, and the court may not rely on factual summaries contained in prior appellate decisions or engage in fact finding at the prima facie stage. (*People v. Clements*, at p. 292; *People v. Lewis* (2021) 11 Cal.5th 952, 972.) We have quoted the factual statement from Sutter's direct appeal to place his current arguments in context, and do not rely on that factual statement to resolve his appeal from the trial court's order that found his petition did not state a prima facie case for relief.

maintain it, he 'thrashed' it and he allowed people to come and go all the time. Sometime after December 2016, Martinez began telling Sutter he had to move, but Sutter did not move.

"On the evening of August 14, 2017, Martinez received a text from Sutter stating that he wanted to get some boxes and he wanted Martinez to go to the Mayfair Drive house. Martinez, however, did not go to the house until the next morning at approximately 7:00 a.m. Martinez knocked on the door, but nobody answered. He then went to the window of the room where Sutter stayed and knocked on the window. Eventually someone inside told Martinez to go to the front of the house. Martinez went to the front door and pulled on it, but it did not open. The door then opened, and Sutter pointed the barrel of a homemade shotgun at Martinez's face and ordered him to shut up, get in the house, and sit down. Martinez turned around and was about to step off the porch when he heard a gunshot that struck him on the back and he fell to the ground. Sutter came out of the house with his father and he began saying Martinez had threatened his family, that he should stomp Martinez, and that it was a good thing he did not kill him. Although Martinez's legs were paralyzed he managed to turn himself over and he pleaded with Sutter not to kill him. However, at that point, Sutter no longer had the shotgun. When Martinez stated, 'God, don't let me die,' Sutter told him there was no God and that after he let Martinez bleed to death, Sutter was going to kill Martinez's mother if she did not sign the house over to him. Despite his injuries, Martinez was able to call 911 on his cell phone.

"Diana Perez heard the gunshot and called 911. She also saw a bald man walk into the yard and look at something on the ground that was not visible to her because her vision was partially obstructed, and a second man carry away a black backpack.

"Fresno County Sheriff's Deputy Manuel Chavez responded to the scene at approximately 7:15 a.m. As Chavez and two other deputies approached the house, he

3.

saw Martinez lying on the ground and Sutter start running away from the deputies. Sutter complied with the deputies' commands to get on the ground and they handcuffed him.

"During a warrant search of the house on Mayfair Drive, the deputies found a black backpack in a refrigerator. The backpack contained a homemade shotgun that was made from two metal tubes and that contained an expended shotgun shell in one end and a live round in the shotgun's vertical grip. Three to four additional live shotgun rounds were found in a nylon bag that was inside the backpack.

"The shotgun blast severed Martinez's spinal cord, leaving him paralyzed from the chest down. He also suffered internal bleeding in his chest cavity and into one of his lungs." (*Sutter*, *supra*, F076910.)

## PROCEDURAL BACKGROUND

On December 18, 2017, after a jury trial, Sutter was convicted of count 1, premeditated attempted murder (§§ 664, subd. (a)/187, subd. (a)), with enhancements that he personally and intentionally discharged a firearm that caused great bodily injury (§ 12022.53, subd. (d)), personally and intentionally inflicted great bodily injury (§ 12022.7, subd. (a)), and personally and intentionally discharged a firearm (§ 12022.5, subd. (a)); and count 2, possession of a firearm by a felon (§ 29800, subd. (a)(1)). He admitted the prior conviction allegations that were alleged in count 2.

On January 18, 2018, the court sentenced Sutter to life with the possibility of parole for count 1, plus 25 years to life for the section 12022.53, subdivision (d) firearm enhancement, and a concurrent three-year term for count 2.

**Direct Appeal**

In *Sutter*, *supra*, F076910, this court affirmed Sutter's convictions on direct appeal. Appellate counsel filed a brief pursuant to *Wende* and Sutter filed a letter brief. Sutter asserted the evidence was insufficient to support his conviction because "Martinez was the only person who implicated him in the shooting and his testimony was not credible for several reasons, including that he was 'high' on methamphetamine the day of

4.

the shooting." Sutter also argued the prosecution did not present any physical evidence or admissions that connected him to the shooting, and "his defense counsel provided ineffective representation because he did not call '[key] witnesses,' attempt to exhaust all state remedies, or present any mitigating evidence at his sentencing hearing."

We rejected these arguments and held "Martinez's testimony was neither physically impossible or inherently improbable," and Sutter failed to identify "the witnesses he claims defense counsel should have called, the mitigating circumstances counsel should have presented, or the remedies he should have pursued. Nor does Sutter explain how he was prejudiced by any of these alleged omissions." (*Sutter*, *supra*, F076910.)

## PETITION FOR RESENTENCING

On September 21, 2022, Sutter filed a petition for resentencing and requested appointment of counsel. Sutter filed a supporting declaration that consisted of a preprinted form where he checked boxes that he was eligible for resentencing because he was convicted of murder, attempted murder, or manslaughter following a trial, and he could not presently be convicted of murder or attempted murder because of changes made to sections 188 and 189, effective January 1, 2019. The trial court appointed counsel to represent Sutter.

### The People's Opposition

The prosecution filed an opposition and argued the record of conviction showed Sutter was ineligible for resentencing because he was the actual shooter, he acted with the intent to kill, and the jury was not instructed on felony murder, aiding and abetting, or the natural and probable consequences doctrine.

### The Trial Court's Denial of the Petition

On March 30, 2023, the court held a hearing on whether Sutter's petition stated a prima facie case. The parties submitted the matter on the pleadings.

On April 10, 2023, the trial court denied Sutter's petition and found he failed to state a prima facie case for relief. Sutter filed a notice of appeal.

## DISCUSSION

As explained above, appellate counsel filed a brief with this court pursuant to *Wende* and *Delgadillo*. The brief also included counsel's declaration that Sutter was advised he could file his own brief with this court. This court also advised Sutter that he could file a supplemental letter brief.

In response to this court's order, Sutter filed a supplemental brief and asked this court to "look[] at" the following issues: (1) the 911 caller said the man with the backpack that contained the gun had hair, and Sutter did not have hair that day; (2) there was no "GSR" (gunshot residue) or fingerprints found, and "that particular gun" could have been reloaded "very easily if [Sutter's] intentions [were] to kill"; and (3) the district attorney "fabricated" the "story" about what happened, and the outcome would have been different if he had a lawyer "who would have fought."

Sutter's claims are solely related to his jury trial and conviction. He has restated the issues that he raised and were rejected in his direct appeal, and they are not cognizable in this appeal from the denial of his section 1172.6 petition for resentencing. "The mere filing of a section [1172.6] petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings. To the contrary, '[n]othing in the language of section [1172.6] suggests it was intended to provide redress for allegedly erroneous prior factfinding.… The purpose of section [1172.6] is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.' " (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947; *People v. DeHuff* (2021) 63 Cal.App.5th 428, 438.)

## DISPOSITION

The trial court's order of April 10, 2023, denying Sutter's section 1172.6 petition for resentencing, is affirmed.